IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

FREDERICK R. BULLOCK and RENEE
BULLOCK,

                Plaintiffs,

        vs.

WELLS FARGO BANK, N.A.,

                Defendant.

No. 3:14-cv-00010-TMB

**ORDER RE:  DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

I.    **PENDING MOTION**

At **Docket 52** Defendant Wells Fargo Bank, N.A. has moved for summary

judgment.  Plaintiffs Frederick R. Bullock and Renee Bullock have opposed the motion,[1]

and Wells Fargo has replied.[2]  Neither party has requested oral argument and the Court

has determined that oral argument would not materially assist in resolving the issue

presented.  Accordingly, the matter is submitted for decision on the moving and

opposing papers.[3]

---

[1] Dockets 60, 63.  The Court notes that the exhibits submitted by Plaintiffs at Docket 63 contain extensive handwritten notes that appear to have been placed on them by Frederick or Renee.  Although these handwritten notes are not properly placed in evidence, the Court will assume that Plaintiffs attest to their authenticity and give them such consideration as they may be otherwise entitled.

[2] Docket 65.

[3] D.Ak. L.R. 7.2(a).

## II.     JURISDICTION/APPLICABLE LAW

This matter was removed to this Court from the Alaska Superior Court, Third Judicial District, thereby invoking the diversity jurisdiction of this Court.  Generally, a federal court exercising its diversity jurisdiction applies the law of the forum state,[4] including its choice of law rules.[5]

"Under the *Erie* doctrine,"[6] it is long settled, "federal courts sitting in diversity apply state substantive law and federal procedural law."[7]  Although a federal court when exercising diversity jurisdiction or pendente jurisdiction over state law questions follows state substantive laws, it usually applies federal procedural rules,[8] including the Federal Rules of Evidence.[9]  However, an exception exists when the evidentiary rule is a part of state substantive law.[10]

When interpreting state law, this Court is bound by the decisions of the state's highest court.[11]  In the absence of a decision by the highest state court, this Court "must

---

[4]  *Conestoga Servs. Corp. v. Executive Risk Indem., Inc.*, 312 F.3d 976, 980 (9th Cir. 2002).

[5]  *Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 (9th Cir. 2005).

[6]  *Erie R. Co. v. Tompkins,* 304 U.S. 64 (1938).

[7]  *Gasperini* v. *Ctro for Humanities, Inc.*, 518 U. S. 415, 427 (1996); *see* 28 U.S.C. § 1652 ("[T]he laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply.").

[8]  *Kohlrautz v. Oilmen Participation Corp.*, 441 F.3d 827, 830–32 (9th Cir. 2006).

[9]  *Wray v. Gregory*, 61 F.3d 1414, 1417 (9th Cir. 1995).

[10]  *Id.*; *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 667 (9th Cir. 2003).

[11]  *See Mullaney v. Wilbur,* 421 U.S. 684, 691 (1975) ("state courts are the ultimate expositors of state law"); *West v. AT&T*, 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law.  When it has spoken, its pronouncement is to be

(continued...)

predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance."[12]

## III.    STANDARD OF REVIEW

Summary judgment is appropriate if, when viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment in its favor as a matter of law.[13]  Support and opposition to a motion for summary judgment is made by affidavit made on personal knowledge of the affiant, depositions, answers to interrogatories, or other materials setting forth such facts as may be admissible in evidence.[14]  In response to a properly supported motion for summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue for trial.[15]  The issue of material fact required to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.  In order to show that

[11](...continued)
accepted by federal courts as defining state law . . . .").

[12]  *S.D. Myers, Inc. v. City and County of San Francisco*, 253 F.3d 461, 473 (9th Cir. 2001); *Paulman v. Gateway Ventures Partners III L.P.* (*In re Filtercorp, Inc.*), 163 F.3d 570, 578 (9th Cir. 1998).

[13]  Fed. R. Civ. P. 56(a); *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (*en banc*); *Taylor v. List*, 880 F.2d 1040, 1044 (9th Cir. 1989).

[14]  Fed. R. Civ. P. 56(c).

[15]  *Id.*; *Henderson v. City of Simi Valley*, 305 F.3d 1052, 1055–56 (9th Cir. 2002).

a genuine issue of material fact exists a nonmoving plaintiff must introduce probative evidence that establishes the elements of the complaint.[16] Material facts are those which may affect the outcome of the case.[17] A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party.[18] "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he is ruling on a motion for summary judgment."[19] The evidence of the non-moving party is to be believed and all justifiable inferences are drawn in his favor.[20] The moving party has the burden of showing there is no genuine issue of material fact; therefore, he bears the burden of both production and persuasion.[21] The moving party, however, has no burden to negate or disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only point out to the Court that there is an absence of evidence to support the non-moving party's case.[22] There is no genuine issue of fact if, on the record taken as a whole, a rational trier of fact could not find in favor of the party opposing the motion.[23]

---

[16] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

[17] *Id.*

[18] *Id.*

[19] *Id.* at 255.

[20] *Id.*

[21] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

[22] *Sluimer v. Verity, Inc.*, 606 F.3d 584, 586 (9th Cir. 2010); *see Celotex*, 477 U.S. at 325.

[23] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

Case 3:14-cv-00010-TMB   Document 67   Filed 04/14/16   Page 4 of 18

In general, in ruling on a motion for summary judgment, a court may not weigh the evidence or judge the credibility of witnesses.[24]  Instead, it generally accepts as true statements made under oath.[25]  However, this rule does not apply to conclusory statements unsupported by underlying facts,[26] nor may the court draw unreasonable inferences from the evidence.[27]

## IV.  BACKGROUND/ISSUE PRESENTED

The facts underlying this case are well known to the parties and are not repeated herein except to the extent necessary to understand this decision.

*Undisputed Facts*

In 1994 Frederick R. Bullock ("Frederick") obtained a 30-year loan (the "Loan") in the principal amount of $75,705 to purchase residential property located at 1191 Lakloey Drive, North Pole, Alaska (the "Property"), more particularly described as:

> Lot 19, Willow Acres Subdivision, According to the Official Plat thereof filed June 9, 1978, as Plat No. 78-102; Records of the Fairbanks Recording District, Fourth Judicial District, State of Alaska

---

[24] *Dominguez-Curry v. Nevada Transp. Dep't.*, 424 F.3d 1027, 1036 (9th Cir. 2005).

[25] *Earp v. Ornoski*, 431 F.3d 1158, 1170 (9th Cir. 2005); *see Williams v. Calderon,* 48 F. Supp.2d 979, 989 (C.D. Cal. 1998) (noting in the context of a habeas claim "[t]he Court is not to determine issues of credibility on a motion for summary judgment; instead, the truth of each party's affidavits is assumed"), *aff'd sub nom. Williams v. Woodford,* 384 F.3d 567 (9th Cir. 2004).

[26] *Walker v. Sumner*, 917 F.2d 382, 387 (9th Cir. 1990).

[27] *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *McLaughlin v. Liu*, 849 F.2d 1205, 1207–09 (9th Cir. 1988).

In connection with the acquisition, Renee A. Bullock ("Renee") executed a Waiver of Homestead Rights dated September 9, 1994, recorded in the Fairbanks Recording District on November 9, 2009, Book 881, page 379.

The Loan was secured by a Deed of Trust ("DOT") on the property in favor of the lender. Through various mesne assignments, Wells Fargo Bank, N.A. ("WF") became the holder of the Loan and beneficiary under the DOT.[28]

The Loan had a troubled history with Frederick missing payments and making late payments. As a result, WF initiated several foreclosure actions, summarized as follows:[29]

September 12, 2001 – The first foreclosure action was initiated with an unpaid principal balance of $71,903.52.

October 15, 2001 – After Frederick made payments, the first foreclosure was terminated.

February 28, 2002 – A second foreclosure initiated.

May 21, 2002 – A Partial Repayment Agreement was entered into under the terms of which Frederick made a payment of $8,000.00.

September 4, 2002 – The second foreclosure was terminated.

January 1, 2004 – WF initiated a third foreclosure action.

---

[28] As used herein, the reference to Wells Fargo or WF includes a reference to its predecessors-in-interest where the context so requires.

[29] As set forth in the Declaration of Andrea Kruse, Docket 53. The Court has fully considered Plaintiffs' objections to that Declaration and finds them to be without merit.

ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
*Bullock v. Wells Fargo Bank, N.A.*, No. 3:14-cv-00010-TMB                                   6

March 18, 2004 – A Loan Modification Agreement was reached with an unpaid principal balance of $76,285.00.[30]

March 10, 2005 – WF initiated its fourth foreclosure action.

March 8, 2006 – A Loan Modification Agreement was negotiated with a modified principal balance of $80,257.52.[31]

February 27, 2008 – Last payment (for December 2007) made.

July 10, 2008 – WF initiated its fifth foreclosure action, which was terminated on December 2, 2009.[32]

January 7, 2010 – With a remaining unpaid balance of $77,419.99 on the Loan, WF initiated the sixth and final foreclosure.

December 15, 2010 – WF as offset bidder acquired the Property at the foreclosure sale.

Subsequently, WF conveyed the Property to the Secretary of Veterans Affairs, who reconveyed it to WF. WF currently holds title to the Property.

Renee A. Bullock ("Renee") caused to be recorded several documents in the Fairbanks Recording District that purport to affect title to the Property. These include:

1. Quit Claim Deed dated September 17, 2009, recorded August 25, 2011, Document 2011-015812-0.

_____

[30] Although it does not appear from the record when that foreclosure proceeding was terminated, logic dictates it was and in the absence of any indication to the contrary, the Court so assumes.

[31] The record does not reflect when that foreclosure proceeding was terminated.

[32] The record does not reflect the reason for terminating this foreclosure action.

ORDER RE:  DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
*Bullock v. Wells Fargo Bank, N.A.*, No. 3:14-cv-00010-TMB                                    7

2. Corrective Quit Claim Deed dated July 30, 2012, recorded October 1, 2012, Document 2012-019627-0.

3. Declaration of Homestead dated September 15, 2010, recorded February 16, 2012, Document 2012-002623-0.

4. Notice of Lis Pendens dated and recorded May 31, 2012, Document 2012-009869-0.

5. Agreement Between Owner and Contractor/Individual dated January 1, 2008, acknowledged August 10, 2010, and recorded September 13, 2010, Document 2010-016883-0.

6. Claim of Mechanic's Lien dated January 1, 2010, recorded March 10, 2011, Document 2011-003891-0.

7. Notice of Non-Responsibility/Individual dated February 1, 2009, recorded July 27, 2012, Document 2012-014204-0.

8. Notice of Completion dated May 27, 2012, recorded July 27, 2012, Document 2012-014205-0.

*Disputed Facts*

Plaintiffs contend that:

1. The obligation underlying the DOT on the Property was satisfied in 2000; and

2. Frederick did not sign the March 6, 2006 Loan Modification Agreement.

## V.  DISCUSSION

Resolution of the pending motion is determined by three issues:  (1) whether the DOT was satisfied in 2000; (2) the validity of the March 2006 Loan Modification

Agreement; and (3) the effect, if any, of the purported interests conveyed to Renee. The Court addresses these issues in order.

A.  *2000 Satisfaction*

Plaintiffs contend that the Loan was paid off in 2000.  As WF correctly notes in its Reply, Plaintiffs submit no evidence to support that contention.  Although Plaintiffs contend that the have a copy of the note marked "paid," they have not produced that note.  On the other hand, WF has attached a copy of the Note contained in its records.[33]

It appears from Plaintiffs' declaration and the record before the court that Plaintiffs confuse the Loan secured by the North Pole Property with another loan secured by property in the Municipality of Anchorage, Loan No. 700666, which was apparently paid in full.  Handwritten notes on the documents submitted by Plaintiffs in support of their opposition exemplify this confusion.  Examples include:  December 8, 2000 Annual Escrow Account Disclosure Statement, with handwritten notation "VA loan # 700666 – Anchorage Property";[34] a printout of the Alaska UCC filings on property in Anchorage with the handwritten notation "700666";[35] an Assignment of Deed of Trust on the Anchorage property with the handwritten note "reconveyance of Anch was fraud";[36] MERS ServicerID printout with handwritten note "VA – Local 700666" and a reference

---

[33]  Docket 53-7 (Ex. F).

[34]  Docket 63-1, p. 1.

[35]  *Id.*, p. 23.

[36]  *Id.*, p. 29.

ORDER RE:  DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
*Bullock v. Wells Fargo Bank, N.A.*, No. 3:14-cv-00010-TMB                                    9

to "300 W. 123rd";[37] and a second printout of the Alaska UCC filings on property in Anchorage with the handwritten notation "VA Loan # 700666."[38] Plaintiffs have submitted *no* evidence that the Loan secured by the North Pole Property at issue in this case was paid in full.

Normally, the Court accepts as true statements made under oath. There are, however, exceptions to that rule. Conclusory statements unsupported by evidence are insufficient to oppose a motion for summary judgment.[39] In this Circuit, conclusory self-serving affidavits lacking any detailed facts and any supporting evidence are insufficient to create a genuine issue of material fact.[40] In this case, not only is the conclusory statement that the Loan was paid off in 2000 unsupported by any evidence in the record, but the very evidence submitted by Plaintiffs coupled with the uncontradicted evidence presented by WF conclusively establish that the Loan at issue in this case secured by the North Pole Property was *not* paid off in 2000, or at any other time.

B. *March 2006 Loan Modification Agreement*

Accepting as true the allegation that Frederick did not execute the March 2006 Loan Modification Agreement does not assist Plaintiffs. In analyzing this issue the Court assumes without deciding that the Loan Modification Agreement fell within the Alaska Statute of Frauds. The essence of the Agreement was that in exchange for

---

[37] *Id.*, p. 35.

[38] *Id.*, p. 39.

[39] *See Rivera v. Nat'l R.R. passenger Corp.*, 331 F.3d 1074, 1978 (9th Cir. 2003); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *Mitchel v. General Elec. Co.*, 689 F.2d 877, 879 (9th Cir. 1987)

[40] *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1063 (9th Cir. 2012).

Frederick's promise to make the payments as modified, WF would (1) terminate its pending foreclosure action and (2) not foreclose in the future. It is undisputed that WF terminated its pending foreclosure action and, until Frederick ceased making payments after the December 2007 payment, did not re-initiate foreclosure. The full performance exception to the Statute of Frauds is part of Alaska law. That exception applies if "there has been full performance on one side accepted by the other in accordance with the contract."[41] WF fully performed its obligations under that Agreement, and Frederick accepted the benefits of that performance.

Neither law nor equity permit Frederick to now repudiate the March 8, 2006 Loan Modification Agreement. Moreover, it is undisputed that at the time of the March 2006 Agreement Frederick was in default under the terms of the Loan. In the absence of WF's agreement to forebear Frederick remained in default and WF was entitled to complete its foreclosure. Even if the March 2006 Loan Modification Agreement is invalid, Plaintiffs would not prevail.

C. *Renee's Interest*

The general rule under Alaska law is that a "purchaser at a deed of trust sale takes land subject only to those encumbrances which were created before execution of the deed of trust . . ."[42] Thus, except to the extent that Renee's interest was created prior to the date Frederick executed the Deed of Trust or otherwise falls within an

---

[41] Alaska Stat. § 09.25.020(1); *accord Carter v. Hoblit*, 755 P.2d 1084, 1088 (Alaska 1988).

[42] *Alaska Laborers Training Fund v. P & R Enters., Inc.*, 583 P.2d 825, 826 (Alaska 1978 (quoting *Lynch v. McCann*, 478 P.2d 835, 836–37 (Alaska 1970) .

Case 3:14-cv-00010-TMB   Document 67   Filed 04/14/16   Page 11 of 18

exception to the general rule, the title acquired by WF at the foreclosure sale is free of those interests. The WF Deed of Trust was executed September 9, 2004. The earliest Renee could have acquired an interest in the Property was January 1, 2008, the date of the Agreement Between Owner and Contractor/Individual, more than three years later. Thus, unless some other provision of law applies, application of the general rule trumps each of Renee's claims. An analysis of Renee's claims shows that no exception applies.

Of the documents purporting to create an interest in the Property in Renee, only four were executed prior to December 15, 2010, the date WF completed its foreclosure and acquired title to the Property: the (1) September 15, 2009 Quit Claim Deed; (2) January 1, 2008 Agreement Between Owner and Contractor/Individual; (3) September 15, 2010 Declaration of Homestead; and (4) January 1, 2010 Claim of Mechanic's Lien. Of those four only one, the January 1, 2008 Agreement Between Owner and Contractor/Individual, was recorded before December 15, 2010.

Alaska law provides:

Invalidity of unrecorded conveyance. A conveyance of real property in the state hereafter made, other than a lease for a term not exceeding one year, is void as against a subsequent innocent purchaser or mortgagee in good faith for a valuable consideration of the property or a portion of it, whose conveyance is first duly recorded. An unrecorded instrument is valid as between the parties to it and as against one who has actual notice of it.[43]

The Court must apply that section to the facts in this case.

---

[43] Alaska Stat. § 34.15.290

<u>January 1, 2008 Agreement Between Owner and Contractor/Individual and</u>
<u>January 1, 2010 Claim of Mechanic's Lien</u>

Although the Agreement Between Owner and Contractor/Individual was recorded

prior to the foreclosure date, and assuming that the Claim of Mechanics Lien relates

back to that date, it does not create any interest in either Plaintiff superior to that of WF.

With respect to the duration of a mechanics lien, Alaska law provides:

> (a) A lien provided for in AS 34.35.050–34.35.120 does not bind real
> property for more than six months after the claim of lien is recorded,
> unless an action is commenced in the proper court to enforce the lien
> within
>> (1) that time; or
>> (2) six months after recording of an extension notice in the same
> recording office within the original six-month period showing the recording
> date and the book and page or instrument number or serial number of the
> initial claim of lien, and the balance owing.[44]

It is undisputed that no action to foreclose the January 1, 2010 Claim of Mechanics Lien

was commenced within six months of the date it was recorded, March 10, 2011.  Thus,

it has expired by operation of law and has no further force or effect.

<u>September 15, 2010 Declaration of Homestead</u>

Even if the Court assumes that the initial waiver of homestead was invalid and

the Declaration of Homestead  was effective as against WF as of the date it was

executed, Plaintiffs do not prevail.  As relevant to this case, Alaska law provides:

> (b) In a deed or conveyance of the family home or homestead by a
> married man or a married woman, the husband and wife shall join in the
> deed or conveyance.
> (c) The requirement that a spouse of a married person join in a deed or
> conveyance of the family home or homestead does not create a

---

[44]  Alaska Stat. § 34.35.080.

proprietary right, title, or interest in the spouse not otherwise vested in the spouse.

(d) Failure of the spouse to join in the deed or conveyance does not affect the validity of the deed or conveyance, unless the spouse appears on the title. The deed or conveyance is sufficient in law to convey the legal title to the premises described in it from the grantor to the grantee when the deed or conveyance is otherwise sufficient, and

 (1) no suit is filed in a court of record in the judicial district in which the land is located within one year from the date of recording of the deed or conveyance by the spouse who failed to join in the deed or conveyance to have the deed or conveyance set aside, altered, changed, or reformed; or

 (2) the spouse whose interest in the property is affected does not record, within one year in the office of the recorder for the recording district where the property is situated, a notice of an interest in the property.[45]

The Alaska Supreme Court has interpreted subsection (d) as:

The first sentence of this subsection means that, if a spouse who appears on the title does not join in a conveyance of the family home, the conveyance is *per se* invalid. The second sentence addresses the situation in which a non-titled spouse does not join in the conveyance: the conveyance is valid and enforceable as long as it is "otherwise sufficient," that is, it meets the requirements of subsection (a) and so long as the non-titled spouse neither files suit to set the conveyance aside within one year from the recording of the conveyance nor files a notice of interest in the property within the same period.[46]

"Therefore the requirement of either filing a suit or recording a notice of interest applies to spouses whose names do not appear on the title."[47]  The Alaska Supreme Court went on to state:  "Non-titled spouses can invalidate deeds and conveyances under AS

---

[45] Alaska Stat. § 34.15.010.

[46] *Nat'l Bank of Alaska v. Ketzler*, 71 P.3d 333, 336 (Alaska 2003).

[47] *Id.*

34.15.010 in the event that they follow the procedure set out in AS 34.15.010(d) and are asserting a right not created by AS 34.15.010."[48]

Frederick acquired title and conveyed to the holder thereof the interest created by the Deed of Trust ultimately held by WF on the same date, November 9, 2004. Renee did not record her Declaration of Homestead evidencing her interest in the Property until September 15, 2010, nearly six years later, or this suit until December 6, 2013, more than nine years later—both well outside the one-year limitation period in § 34.15.010(d).[49]

<u>September 2009 Quit Claim Deed</u>

In their Declaration, Plaintiffs state with respect to the September 2009 Quit Claim Deed: "it is Renee A Bullocks property, has been since Frederick signed over to me in 2009, and I was so broke and homeless I couldn't even aford [*sic*] to record it but I faxed copies to all associated with a stinkin [*sic*] loan. . ."[50] For the purpose of ruling on the motion before it, the Court interprets this to establish that WF had actual notice of the Quit Claim Deed conveying Frederick's interest to Renee.

A quitclaim deed transfers only the interest, if any, that the grantor has in the property.[51] As grantee Renee "stood in the shoes" of Frederick and acquired no greater rights than those Frederick held. In this case, at the time that Frederick conveyed the

---

[48] *Id.*

[49] *Cf. Ketzler*, 71 P.3d at 337 (holding that because the spouse took timely action within the one year to invalidate the deed of trust, she could invalidate it to protect her right of inheritance (homestead allowance)).

[50] Docket 63, p. 4.

[51] *Sabo v. Horvath*, 559 P.2d 1038, 1043 (Alaska 1976).

Property to Renee it was encumbered by the Deed of Trust held by WF. Thus, Renee acquired her interest in the property subject to the WF Deed of Trust and the subsequent foreclosure sale extinguished that interest.

> Post December 15, 2010 Instruments

The remaining four instruments were all not only executed and recorded after the WF Deed of Trust was recorded, but also after WF completed its foreclosure sale and acquired title to the Property.[52] An instrument purporting to affect title to real property recorded outside the chain of title is a "wild deed" and does not give constructive notice under the Alaska Recording Act.[53] In this case, insofar as it involved the interest of either Frederick or Renee in the Property, the chain of title terminated on December 15, 2010, when WF completed its foreclosure action. The instruments recorded after that date were "wild deeds" having no effect on the interest of WF. Nor does it appear that any of the four fall within any exception to the general rule discussed above that a deed of trust trumps all interests created after its execution.

The Court has considered the other issues raised by Plaintiffs and finds them to be inapplicable or without merit.[54]

## VI.    ORDER

Wells Fargo's Motion for Summary Judgment at **Docket 52** is **GRANTED**.

---

[52] These are: (1) Corrective Quit Claim Deed dated July 30, 2012, recorded October 1, 2012, Document 2012-002623-0; (2) Notice of Lis Pendens dated and recorded May 31, 2012, Document 2012-009899-0; (3) Notice of Non-Responsibility/Individual executed and recorded July 27, 2012, Document 2012-014204-0; and (4) Notice of Completion executed and recorded July 27, 2012, Document 2012-014205-0.

[53] *Sabo*, 559 P.2d at 1039.

[54] *E.g.*, misspelling of Frederick's name, identity theft.

ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
*Bullock v. Wells Fargo Bank, N.A.*, No. 3:14-cv-00010-TMB                          16

The Complaint on file herein is hereby **DISMISSED**. Plaintiffs Frederick R. Bullock and Renee A. Bullock to take nothing by way thereof and judgment thereon to be entered in favor of Defendant Wells Fargo Bank, N.A.

Title in the residential real property located at 1191 Lakloey Drive, North Pole, Alaska, more particularly described as Lot 19, Willow Acres Subdivision, According to the Official Plat thereof filed June 9, 1978, as Plat No. 78-102; Records of the Fairbanks Recording District, Fourth Judicial District, State of Alaska, is hereby vested in Wells Fargo Bank, N.A., free and clear of any interests of Plaintiffs Frederick R. Bullock and Renee A. Bullock, or either of them.

The following documents recorded in the Fairbanks Recording District, State of Alaska, are hereby expunged and have no further force or effect:

1. Quit Claim Deed dated September 17, 2009, recorded August 25, 2011, Document 2011-015812-0.

2. Corrective Quit Claim Deed recorded October 1, 2012, Document 2012-019627-0.

3. Declaration of Homestead dated September 15, 2010, recorded February 16, 2012, Document 2012-002623-0.

4. Notice of Lis Pendens dated and recorded May 31, 2012, Document 2012-009869-0.

5. Agreement Between Owner and Contractor/Individual dated January 1, 2008, acknowledged August 10, 2010, and recorded September 13, 2010, Document 2010-016883-0.

Case 3:14-cv-00010-TMB   Document 67   Filed 04/14/16   Page 17 of 18

6.  Claim of Mechanic's Lien executed January 1, 2010, recorded March 10, 2011, Document 2011-003891-0.

7.  Notice of Non-Responsibility/Individual dated February 1, 2009, recorded July 27, 2012, Document 2012-014204-0.

8.  Notice of Completion dated May 27, 2012, recorded July 27, 2012, Document 2012-014205-0.

Defendant Wells Fargo Bank, N.A. is hereby awarded costs of suit incurred herein, together with reasonable attorney's fees under Rule 82, Alaska Rules of Court.[55]

The Clerk of the Court is directed to enter final judgment accordingly.

**IT IS SO ORDERED**.

Dated:  April 14, 2016.

s/ Timothy M. Burgess
TIMOTHY M. BURGESS
United States District Judge

---

[55]  *See, e.g., Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 883–84 (9th Cir. 2000); *Klopfenstein v. Pargeter*, 597 F.2d 150, 152 (9th Cir. 1979); *see also CRST Van Expedited, Inc. v. Werner Ent., Inc.*, 479 F.3d 1099, 1111 (9th Cir. 2007) (holding that the decision of the Alaska Supreme Court in *State v. Native Village of Nunapitchuk*, 156 P.3d 389 (Alaska 2007) that Rule 82 was procedural not substantive notwithstanding, did not affect the applicability of that Rule in federal cases where it otherwise applied).